The PEOPLE of the State of
Colorado, Complainant

Daniel Paul D'ACQUISTO, Respondent.

No. 05PDJ075.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Aug. 9, 2006.

On June 23, 2006, a Hearing Board composed of E. Steven Ezell and Sisto J. Mazza, both members of the Bar, and William R. Lucero, the Presiding Disciplinary Judge ("the PDJ"), held a Sanctions Hearing pursuant to C.R.C.P. 251.18. April M. Seekamp appeared on behalf of the Office of Attorney Regulation Counsel ("the People") and Daniel Paul D'Acquisto ("Respondent") appeared pro se. The Hearing Board issues the following Opinion and Order Imposing Sanctions.

## OPINION AND ORDER IMPOSING SANCTIONS

### I. *ISSUE*

Disbarment is generally appropriate when a lawyer *knowingly converts* client property *for his own benefit*,[1] while suspension is ap-

1. ABA *Standard* 4.1, *Commentary*.

propriate when a lawyer *knows or should know he is dealing improperly* with client property. Respondent failed to refund or account to one of his clients for $3,500.00 in fees tendered for pre-trial representation and failed to appear for scheduled events on six client matters. Is disbarment the appropriate sanction when there is significant evidence of mitigation?

***SANCTION IMPOSED:*** **ATTORNEY SUSPENDED FOR THREE (3) YEARS**

### II. *PROCEDURAL HISTORY AND BACKGROUND*

On October 24, 2005, the People filed a Complaint that outlined twenty-three separate claims related to six separate client matters. Respondent filed an "Answer with Affirmative Defenses" on January 3, 2006. On March 14, 2006, the People filed a "Motion and Brief in Support of Summary Judgment." Respondent failed to respond in any way and the PDJ granted the motion and entered judgment as to all twenty-three claims on April 20, 2006.

The entry of summary judgment proved, as a matter of law, the facts and rule violations outlined in the People's Complaint, which included multiple violations of Colo. RPC 1.3, 1.4, 1.16(d), 3.4(c) and 8.4(d). The most serious claim involved a violation of Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, *knowing conversion* ).

The PDJ originally scheduled this matter for a Sanctions Hearing on May 8, 2006. On that date, Respondent appeared for the first time since the At–Issue Conference and requested a continuance in order to present evidence he believed would be helpful to the Hearing Board's consideration of the appropriate sanction. The PDJ granted Respondent's request and continued the Sanctions Hearing to June 23, 2006.

### III. *FINDINGS OF MATERIAL FACT*

The following facts have been established

by clear and convincing evidence.[2] The Hearing Board considered these findings of fact and heard additional evidence of aggravating and mitigating factors in order to determine the appropriate sanction for Respondent's misconduct.[3]

Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on October 16, 2000. He is registered upon the official records of the Colorado Supreme Court, Attorney Registration No. 32376. Respondent is therefore subject to the jurisdiction of this court in these disciplinary proceedings pursuant to C.R.C.P. 251.1(b).

### The Nathan Winzenried Matter

In June 2004, Respondent agreed to represent Nathan Winzenried in two separate criminal cases and prepared a written fee agreement to that end.[4] Pursuant to his oral agreement and the written fee agreement, Respondent charged Mr. Winzenried the sum of $3,500.00 for "all fees up to trial" on both cases as well as the cost of an offense-specific report. Mr. Winzenried's father, Allan Winzenried, tendered a $3,000.00 check to Respondent. This check and an earlier $500.00 payment represented full-payment for Respondent's *pre-trial* representation of Mr. Winzenried.

Though Respondent agreed to represent Mr. Winzenried, Respondent failed to appear and failed to prepare him for return dates in both cases. Mr. Winzenried failed to appear for a motions hearing, because Respondent advised him that he did not need to appear since Respondent would appear on his behalf. Mr. Winzenried was later arrested for this failure to appear. As a result, the court increased Mr. Winzenried's bond in both cases.

Based upon Respondent's failure to appear on behalf of his client, the court appointed successor-counsel who requested Mr. Winzenried's file. Respondent failed to provide the file. Successor-counsel had to reorder the discovery and pay for the previously completed offense-specific report, because Respondent had not paid the doctor with the funds he received from Allan Winzenried.

Although Allan Winzenried asked Respondent to return the $3,000.00, Respondent did not return any portion of money he collected, a total of $3,500.00. Respondent testified at the Sanctions Hearing that he placed these funds into his trust account, but there is nothing in the record to show what portion of the $3,500.00, if any, Respondent earned under the fee agreement or what portion he used for his benefit.[5]

### The Julia Munoz Matter

In March 2004, Julia Munoz hired Respondent to represent her in a criminal matter. Respondent appeared in court with Ms. Munoz at her plea hearing, but later failed to appear for the sentencing hearing. The judge continued the matter and wrote Respondent a letter expressing his concern over the failure to appear. The judge advised Respondent to appear on December 14, 2004. Respondent again failed to appear for Ms. Munoz's sentencing hearing and the judge reported the matter to the People.

---

2. *See* Order Re: Motion for Summary Judgment dated April 20, 2006.

3. While the facts and rule violations have been established by clear and convincing evidence, the People still bear the burden of proving aggravating factors by clear and convincing evidence at the sanctions hearing. *See* ABA *Standard* 3.0 and C.R.C.P. 251.18(d).

4. The text of the fee agreement only referenced one of Nathan Winzenried's cases. Mr. Winzenried's affidavit in support of the People's Motion for Summary Judgment stated that Respondent orally agreed to represent Mr. Winzenried on both cases. Mr. Winzenried stated that he did not want both cases referenced in the fee agreement, because he did not want his parents to know he had been charged with two cases.

5. Respondent disputed in his "Answer and Affirmative Defenses" that he represented Mr. Winzenried in both cases and that Mr. Winzenried was entitled to any refund. The PDJ finds that the facts established by virtue of summary judgment settles this issue *on the rule violations.* However, summary judgment does not preclude the Hearing Board from considering Respondent's *duties, mental state, injury, and mitigation/aggravation* in determining the appropriate sanction under ABA *Standard* 3.0.

### The Jerina Blea Matter

In September 2004, Respondent agreed to represent Jerina Blea in a custody matter. Respondent appeared with Ms. Blea in court and the judge ordered the parties to attempt mediation before it set the matter for hearing. The court set the matter for hearing on December 22, 2004, and for mediation on December 17, 2004.

Ms. Blea did not attend the mediation because Respondent assured her that he would continue the mediation and hearing dates to accommodate her. However, Respondent never rescheduled these matters nor did he appear for the mediation or hearing dates. At the hearing, the judge found Ms. Blea failed to abide by the court's orders and granted temporary custody of her daughter to the petitioner. Ms. Blea attempted, but could not reach Respondent, and later went forward on her case without the assistance of counsel.

### The Scott Glaser Matter

In the summer of 2004, Scott Glaser retained Respondent to defend him in a criminal matter. The court set the matter for trial on February 4, 2005. Respondent assured Mr. Glaser that he would contact him to discuss pretrial motions. Respondent never contacted Mr. Glaser. Mr. Glaser then attempted to reach Respondent by telephone, but Respondent did not answer the calls or return the messages.

Respondent failed to appear for a pre-trial conference in Mr. Glaser's case and later failed to appear for trial. Respondent filed a written motion to vacate the trial date, but the motion did not reach the court until after the scheduled trial date. After Respondent failed to appear for trial, Mr. Glaser asked the court to appoint new counsel on his case.

The judge issued a show cause order for Respondent to appear in court and explain his absence on the trial date. Respondent failed to appear as ordered by the court.

### The Curtis Escamilla Matter

In the summer of 2004, Respondent agreed to represent Curtis Escamilla in a criminal matter. The court scheduled the case for a pre-trial conference and Respondent advised Mr. Escamilla he did not need to appear. When neither Respondent nor Mr. Escamilla appeared, the court issued a bench warrant for Mr. Escamilla's arrest. Respondent assured Mr. Escamilla that he would take care of the costs incurred due to the warrant, but Mr. Escamilla ultimately paid the costs.

The court continued Mr. Escamilla's case for an offense-specific report and Respondent assured Mr. Escamilla that he would appear at the future date. Respondent failed to appear for this court date. Mr. Escamilla appeared without counsel and the court continued the matter. Respondent failed to appear for a second time. Mr. Escamilla ultimately asked the court for additional time to seek other legal advice. The court granted him a thirty-day continuance.

The judge issued a contempt citation for Respondent and set the matter for a show cause hearing. Respondent failed to appear as ordered by the court. The judge then issued an arrest warrant for Respondent. Respondent was arrested and the judge ordered that he serve ten days in jail. Respondent testified that he served several, but not all ten days of this sentence.

### The Christopher Broughton Matter

In the early fall of 2004, Respondent represented Christopher Broughton in a case involving a restraining order. The court set the matter for a pre-trial conference and Respondent advised Mr. Broughton that he would not need to appear at the conference. When neither Respondent nor Mr. Broughton appeared, the court issued a warrant for Mr. Broughton's arrest. When Mr. Broughton had not heard from Respondent for several weeks, he called the court and learned for the first time that the court had issued a warrant for his arrest. The court vacated the warrant after Mr. Broughton explained the circumstances surrounding his failure to appear and then continued the matter twice for a pre-trial conference.

Although the court called Respondent while on the record and left him a voicemail,

Respondent failed to appear and the court issued a show cause order. When Respondent again failed to appear, the court issued a warrant for Respondent's arrest. Mr. Broughton ultimately represented himself and entered into a plea agreement without counsel.

## IV. *SANCTIONS*

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. *In re Roose*, 69 P.3d 43, 46–47 (Colo.2003).

### *Analysis Under the ABA Standards*

ABA *Standard* 3.0 directs the Hearing Board to first consider the duty breached, the mental state of the lawyer, the injury or potential injury caused, and the aggravating and mitigating evidence in determining the appropriate sanction for lawyer misconduct.

Generally, sanctions are more onerous the greater the injury to the client and the more culpable a lawyer's conduct. For example, disbarment is generally appropriate when a lawyer knowingly *converts* client property *for his own benefit* and causes injury or potential injury to a client. ABA *Standard* 4.11.

Suspension, on the other hand, is generally appropriate when a lawyer knows that he is *dealing improperly* with client funds and causes injury to the client. ABA *Standard* 4.12. In addition, disbarment is generally appropriate when a lawyer engages in a pattern of neglect with respect to client matters and causes *serious injury* to a client. ABA *Standard* 4.41. But suspension is generally appropriate when a lawyer engages in a pattern of neglect and causes *injury* to a client. ABA *Standard* 4.42.

### A. THE DUTY VIOLATED

Respondent violated duties to his client, the public, and the legal profession. He failed to appear at scheduled court dates on behalf of six clients and in one instance failed to account to a client for money tendered as a fee for Respondent's anticipated services. "Attorney misconduct perpetuates the public's misperception of the legal profession and breaches the public and professional trust." *In re DeRose*, 55 P.3d 126, 131 (Colo.2002) (paraphrasing *In re Pautler*, 47 P.3d 1175, 1178 (Colo.2002)).

### B. THE LAWYER'S MENTAL STATE

■ According to the ABA *Standards*, "knowledge is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." Here, Respondent acted with awareness when he failed to appear at scheduled hearings and failed to account to his client for money he received for representation of his clients.

### C. THE ACTUAL OR POTENTIAL INJURY

■ Respondent's misconduct led to the delay of court proceedings, the incarceration of one client, the temporary loss of custody of another client's child, and the loss of money entrusted to him by another client. The Hearing Board specifically considered the letter Nathan Winzenried tendered to the Hearing Board in its determination of the appropriate sanction.

In addition to causing his clients significant injury, Respondent also caused injury to the legal profession and the effective administration of justice when he failed to appear on behalf of clients with pending court matters.

### D. AGGRAVATING AND MITIGATING FACTORS

#### 1. MATTERS IN AGGRAVATION, ABA *STANDARD* 9.2

The Hearing Board considered evidence of the following aggravating circumstances in

deciding the appropriate sanction to impose. Aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline imposed. ABA *Standard* 9.21.

### Pattern of Misconduct/Multiple Offenses—9.22(c) & (d)

■ The Hearing Board finds that Respondent engaged in a pattern of misconduct by failing to professionally represent clients and by failing to appear in court on six separate client matters, in some instances, multiple times in the same case.

### 2. MATTERS IN MITIGATION, ABA STANDARD 9.3

■ The Hearing Board considered evidence of the following mitigating circumstances in deciding what sanction to impose. Mitigating circumstances are any considerations, or factors that may justify a reduction in the degree of discipline imposed. ABA *Standard* 9.31.

### Absence of a Prior Disciplinary Record—9.32(a)

Respondent received his license to practice law in the State of Colorado on October 16, 2000. He has no prior disciplinary record.

### Personal or Emotional Problems—9.32(c)[6]

Although Respondent offered no expert evidence on this point, he testified to the severe emotional stress he felt at the time he represented the six clients listed in the Complaint. The woman he has shared a home with for over eight years also testified about Respondent's compulsive behavior, which has caused conflict in their relationship. She also testified to Respondent's inability to focus on

his legal practice, especially after he opened an office as a sole practitioner in their home. On January 21, 2004, Respondent volunteered to a court clerk that he "pretty much had a complete mental breakdown" but was trying to get things straightened out for clients who had missed court dates.[7] While this evidence falls short of proving that an *obsessive-compulsive disorder* caused his misconduct, this evidence nevertheless sheds light on Respondent's behavior. *See People v. Lujan*, 890 P.2d 109–112 (Colo.1995); ABA *Standard* 9.32(h).

### Inexperience in the Practice of Law—9.32(f)

Respondent began his legal career in a law firm and worked closely with a senior lawyer on civil cases for nearly two years. Respondent then opened his own general practice, which included criminal cases. He had little or no criminal litigation experience. Furthermore, he took these cases without associating with experienced counsel. While Respondent should have known that indiscriminately taking on all clients and charging them low fees compromised his ability to professionally represent all of them, the Hearing Board cannot find by clear and convincing evidence that Respondent did so with a dishonest or selfish motive. What is better established by the evidence is that Respondent's inexperience and naiveté, and not a selfish motive or dishonesty, contributed to his inability to live up to his client responsibilities.

### Imposition of Other Sanctions or Penalties—9.32(k)

Respondent spent several days in jail for his failure to appear and show cause why he should not be held in contempt of court arising out of one of the disciplin-

---

6. C.R.C.P. 251.23(c) allows the PDJ to take whatever action necessary when it appears a respondent is so incapacitated as to be unable to proffer a defense. While Respondent presented a relatively substandard case of mitigation, he offered some evidence and clearly understood the nature of these proceedings.

7. Exhibit F of the People's Motion and Brief in Support of People's Motion for Summary Judgment.

ary matters addressed in this opinion. Furthermore, Respondent has been administratively suspended for failing to cooperate in the investigation since June 22, 2005.

**Remorse—9.32(*l* )**

Respondent's remorse for his misconduct is genuine. He recognizes that serious consequences must follow his egregious neglect of client matters. Furthermore, he recognizes the need to address what he describes as an obsessive-compulsive disorder before he ever represents another member of the public as a lawyer. While Respondent expressed remorse, he should have paid restitution to Alan Winzenried or made arrangements. However, it is obvious that his ability to generate money to pay restitution has been limited since his administrative suspension. He now works as a cabinet installer.

### *Analysis Under Case Law*

Here, by virtue of the summary judgment entered in favor of the People, the Hearing Board must find that Respondent *knowingly converted* funds as charged in the complaint and that he engaged in a pattern of neglect in client matters and causes serious injury to a client. Generally, these rule violations could call for disbarment.

■ However, the presumption of disbarment under the ABA *Standards* does not always apply. Each case is unique and calls for an analysis based upon more than the presumption alone. The Colorado Supreme Court has cautioned Hearing Boards to carefully weigh any mitigating factors that might overcome what might otherwise be the presumed sanction of disbarment. *In re Fischer*, 89 P.3d 817 (Colo.2004).

Like Fischer, Respondent genuinely acknowledged responsibility for his ethical violations to his clients and the legal system, a factor the Colorado Supreme Court found to be the "foremost" among the numerous mitigating factors warranting a suspension of a year and a day rather than disbarment.

Unlike Fischer, however, Respondent has not been cooperative with the People or diligent in presenting his case in these proceedings. Even with his license to practice law in jeopardy, Respondent failed to focus on important procedures and issues. For example, Respondent failed to file a response to the People's motion for a summary judgment. Respondent's misconduct charged in the complaint, his subsequent failure to address the damage he caused the courts and his clients, and his failure to cooperate with the investigation in these proceedings all demonstrate a blatant violation of ethics and need to protect the public.

### V. CONCLUSION

■ Even serious breaches of ethics, including "knowing conversions" don't always present the need to disbar an attorney. See *In Re Fischer*, 89 P.3d 817–822 (Colo.2004). While the gravamen of the People's complaint is Respondent's knowing conversion of client funds and engaging in a pattern of neglect in dealing with clients, both serious matters, there is considerable evidence of mitigation including the *specter*[8] of a mental health problem contributing to Respondent's failure to act professionally.

Though Respondent failed to prove mitigation under ABA Standards 9.32(h), mental disability or impairment, the evidence as a whole establishes that Respondent is a young, naïve, and inexperienced lawyer with substantial personal and emotional problems, rather than a lawyer who is fundamentally dishonest or beyond rehabilitation. *See In re*

---

8. While the Hearing Board finds that Respondent failed to establish mitigation under ABA *Standards* 9.32(h), the Hearing Board finds that Respondent's evidence sufficiently established personal or emotional problems. The issue of potential serious mental health problems that affected his failure to tend to his ethical duties

was not fully addressed by either party. Respondent raised the issue but failed to carry his burden of proof on the issue and the People offered no evidence on Respondent's mental health. Current testimony on this issue would have been helpful to the Hearing Board.

*DeRose,* 55 P.3d 126, 130 (Colo.2002) (the Colorado Supreme Court found that attorney's dishonest motive supported disbarment rather than a suspension); *In re Roose,* 180 Okla. 337, 69 P.3d 43, 47 (Colo.2003) (Colorado Supreme Court noted that attorney's actions and motives were misguided, rather than fundamentally dishonest).

■ Furthermore, we do not have clear and convincing evidence for purposes of sanctions that the conversion here was of the type that almost always calls for disbarment despite substantial mitigating factors. *Compare People v. Rhodes,* 107 P.3d 1177, 1180 (Colo.O.P.D.J.2005) (an attorney clearly converted $50,000.00, as opposed to negligently or mistakenly handling money belonging to his clients and clients of other lawyers in order to meet Respondent's financial obligations). Finally, there is no clear and convincing evidence that Respondent *engaged in a pattern of taking client money.* The only case involving client money is the Winzenried case.

■ The Hearing Board concludes that protection of the public can be accomplished while giving Respondent an opportunity to educate and rehabilitate himself. Respondent recognizes that he is not ready practice law and might never be. He further recognizes that if he ever practices law again, he must first deal with the issues addressed in this opinion. Weighing the mitigating factors against the aggravating factors, the Hearing Board finds that a lengthy suspension with strict conditions precedent to reinstatement will protect the public.

## VII. *ORDER*

It is therefore ORDERED:

1. DANIEL PAUL D'ACQUISTO, Attorney Registration Number 32376, is **SUSPENDED FROM THE PRACTICE OF LAW FOR THREE YEARS,** effective thirty-one (31) days from the date of this Order.

2. DANIEL PAUL D'ACQUISTO, **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days from the date of this Order. Respondent shall have ten (10) days thereafter to submit a response.

3. DANIEL PAUL D'ACQUISTO, as a condition precedent to his petition for reinstatement, **SHALL** pay full restitution to Nathan and Alan Winzenried in the amount of $3,500.00 plus statutory interest and/or the Attorney's Fund for Client Protection in the event the Fund already provided full or partial restitution to the Winzenrieds.

4. DANIEL PAUL D'ACQUISTO, as a condition precedent to his petition for reinstatement, **SHALL** submit with his petition for reinstatement proof that he has met with a mental health professional monthly for the year preceding his petition for reinstatement.

5. DANIEL PAUL D'ACQUISTO, as a condition precedent to his petition for reinstatement, **SHALL** submit to an Independent Medical Examination by a qualified doctor agreeable to the People. Respondent, not the People, shall be responsible for the cost of the IME. Once a qualified expert is chosen, it is Respondent's duty to advise the PDJ so that an appropriate order may be drafted and presented to the doctor as to what issues to address in a report to this court. The doctor shall have access to all records in the People's possession as well as this opinion before meeting with Respondent for the scheduled IME.

6. Prior to the commencement of this hearing, the PDJ **DENIED** a Motion to Strike and a Motion *in Limine* filed by the People on June 13, 2006.

WILLIAM R. LUCERO
PRESIDING DISCIPLINARY JUDGE
/s/ *Original Signature on File*
E. STEVEN EZELL
HEARING BOARD MEMBER
/s/ *Original Signature on File*
SISTO J. MAZZA
HEARING BOARD MEMBER